UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIM L.P., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 18-CV-552-JED-FHM |
| ANDREW M. SAUL,[1] Commissioner of the Social Security Administration, | ) ) ) ) |
|     Defendant. | ) ) |

**OPINION AND ORDER**

This Social Security case comes before the Court on the Report and Recommendation (R&R) (Doc. 18) of United States Magistrate Judge Frank H. McCarthy, who recommends the Court affirm the Commissioner's finding of not-disabled.

**I.     STANDARD OF REVIEW**

In reviewing a magistrate judge's recommendation, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). In reviewing the Commissioner's decision, the Court's task is to determine "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989).

---

1. Effective June 17, 2019, Andrew M. Saul became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted as the defendant in this action.

**II.      BACKGROUND AND ALJ DECISION**

Plaintiff is a 43-year-old woman with a high school education and, according to the ALJ, no past relevant work. (R. 24, 80). She alleges disability as of January 6, 2014, (R. 13, 35), due to the following impairments: her HIV-positive status, borderline intellectual functioning, obesity, sleep apnea, depression, anxiety, and diabetes. (R. 35–37).

The ALJ ultimately found Plaintiff not disabled at step five of the five-step sequence used to determine disability. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the steps in detail). The ALJ made the following functional capacity (RFC) determination:

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day. The claimant should avoid climbing ladders, ropes, or scaffolds. The claimant can understand, remember, and carry out simple tasks. Public contact should not be a part of the job duties. The claimant can tolerate superficial contact with coworkers and supervisors.

(R. 20). Given these functional limitations and Plaintiff's vocational information, the ALJ found that Plaintiff could successfully perform the duties required of a variety of occupations as defined in the Dictionary of Occupational Titles (DOT). Citing the testimony of a vocational expert (VE), the ALJ determined that Plaintiff could work as

- an Agricultural Produce Sorter, DOT 529.687-186, 1991 WL 674781;
- a Small Product Assembler, DOT 706.684-022, 1991 WL 679050; and
- a Bottling Line Attendant, DOT 920.687-042, 1991 WL 687971.

(*See* R. 25). According to the VE, there were 45,000 Agricultural Produce Sorter jobs in the national economy, 190,000 Small Product Assembler jobs, and 65,000 Bottling Line Attendant jobs. (R. 59–60). Based on this testimony, the ALJ found that Plaintiff was capable of finding "other work" that exists in significant numbers in the national economy. (R. 26). As a result, the ALJ reached an ultimate finding of "not disabled." (*Id.*).

**III.   DISCUSSION**

In her Opening Brief (Doc. 14), Plaintiff asserts that the ALJ erred in finding that she was capable of finding other work in significant numbers because the proposed occupations were inappropriate for a person with her limitations. Although Plaintiff does not always cast it as such, the thrust of her argument is that the ALJ failed to properly consider certain evidence when formulating her RFC. Primarily, Plaintiff takes issue with the ALJ's supposed failure to properly evaluate the opinion evidence of state agency psychologists, (*see* Doc. 14 at 2–4), but she also argues he failed to adequately account for her mathematical limitations, (*id.* at 5–6); her HIV status, (*id.* at 6); and her inability to adapt to a work environment, (*id.* at 6–7).[2] Plaintiff asserts that a more accurate RFC would have shown her to be unable to perform the occupations supposedly available to her in the national economy. Most of her arguments lack merit, but the ALJ's handling of the opinions offered by the state agency doctors was indeed flawed and requires remand.

**A.   State Agency Opinions**

Plaintiff argues that the ALJ failed to properly account for the mental RFC findings of the state agency psychologists who evaluated Plaintiff's medical records at the initial determination and reconsideration stages of the adjudication process. In the non-exertional portion of his RFC finding, the ALJ determined that Plaintiff could "understand, remember, and carry out simple tasks." (R. 20). In reaching this determination, the ALJ gave "substantial weight" to the Mental Residual Functional Capacity (MRFC) evaluations completed by the state agency psychologists. (R. 24). Plaintiff argues, however, that the ALJ's conclusion omits a key portion of their findings.

---

2. In her Opening Brief, Plaintiff organizes her arguments under two broadly stated points of error. First, that "[t]he ALJ failed to properly evaluate the medical source evidence"; and second, that "[t]he ALJ failed at step five of the sequential evaluation process." (*See* Doc. 14 at 2). All of her arguments, however, relate to limitations that she claims the ALJ failed to account for in his RFC finding.

3

In one part of the MRFC evaluations, which are essentially identical, the psychologists stated that Plaintiff could "perform simple tasks with routine supervision." (R. 76, 91). However, the evaluations also show that the psychologists found she could understand and remember only "simple 1-2 step instructions (simple, unskilled level)." (*Id.* at 75, 90). In omitting the more precise description of her limitation, Plaintiff argues, the ALJ impermissibly cherrypicked the portions of the psychologists' opinion that supported his conclusion.

Plaintiff contends that the omission is material because the "1-2 step instructions" limitation, properly incorporated into her RFC, would have eliminated the role of Small Product Assembler as defined under the DOT. The DOT assesses jobs in terms of the "General Educational Development" (GED) that a person would need in order to satisfy that job's functional duties. Each job is assigned a score representing the required level "Mathematical Development," "Language Development," and "Reasoning Development." *See* DOT, app. C, 1991 WL 688702 (4th Ed. Rev. 1991). The DOT scores the occupation of Small Product Assembler as reasoning level 2, which requires a worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions." DOT, Small Product Assembler, 706.684-022, 1991 WL 679050 (emphasis added). By contrast, an occupation scored at reasoning level 1 requires only that a worker be able to "[a]pply commonsense understanding to carry out *simple one- or two-step instructions.*" DOT, app. C, 1991 WL 688702 (emphasis added). Thus, according to Plaintiff's reading of the psychologists' findings, she would be unable to perform in any job requiring a reasoning score higher than level 1, including the job of Small Product Assembler.

Judge McCarthy was unpersuaded by this argument. In his R&R, he described the psychologists' statements regarding "1-2 step instructions" as being part of their psychiatric review technique (PRT), not their MRFC opinion, which more broadly described Plaintiff as being limited

4

to "simple tasks with routine supervision." (Doc. 18 at 3–4). As a result, Judge McCarthy concluded, the ALJ's RFC finding was entirely consistent with the opinions of the state agency psychologists. The Court respectfully disagrees.

As a preliminary matter, the "1-2 step instructions" limitation does not appear in the PRT portion of the psychologists' evaluations.[3] On the contrary, the finding appears under the heading "Mental Residual Functional Capacity Assessment." (*See* R. 74–75, 89–90).

More importantly, an ALJ is not permitted "to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)); *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007). An ALJ does not have to discuss every piece of evidence, but "he or she is required to discuss the uncontroverted evidence not relied upon and significantly probative evidence that is rejected." *Frantz*, 509 F.3d at 1303. Here, the ALJ adopted the psychologists' opinion that Plaintiff was capable of following simple instructions, but he apparently rejected their determination that the instructions would have to be limited to one to two steps. His decision is silent as to why he opted not to include the more specific limitation.

The Commissioner argues that the ALJ was not required to address the "1-2 step" limitation because it was in "Section I of the agency's three-part mental residual functional capacity (RFC) form completed by the state agency consultants." (Doc. 20 at 1, citing R. 75, 90). As such, it was merely a "preliminary finding." (Doc. 20 at 2). In support of this reading, the Commissioner cites the Social Security Administration's Program Operations Manual System (POMS), which instructs state agency psychologists that Section III is for recording the mental RFC determination,

---

3. (*See* R. 70–72 [PRT, initial determination], 85–87 [PRT, reconsideration]).

while "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations . . . and does not constitute the RFC assessment." (*Id.* at 2, quoting POMS DI 24510.060). Because the "1-2 step" limitation was in Section I, the Commissioner argues, it was not actually part of the state agency psychologists' RFC opinion and the ALJ was free to disregard it. This argument is untenable for several reasons.

First, the contested limitation is not found in "Section I" of the MRFC form. This is because the psychologists did not give their opinions on a paper version of SSA-4734-F4-SUP, the standard three-section form referred to in the POMS.[4] They completed their reports on the Electronic Claims Analysis Tool ("eCAT"), (*see* R. 93), which is not divided into numbered sections as on the standard form. (*See* R. 74–75, 89–90). The Commissioner simply ignores this distinction.

Second, a comparison of the traditional SSA-4734-F4-SUP form and the eCAT's MRFC report makes it clear that the "1-2 step" limitation was a final conclusion, not a "preliminary finding." Section I of the traditional SSA-4734-F4-SUP form is merely a matrix used to score the degree to which a claimant's impairments limit him or her in various aspects of several core mental functions. There is no space for a narrative explanation for each finding. Instead, the form instructs completing psychologists to offer their narrative conclusions separately in Section III, which is labeled "Functional Capacity Assessment." The eCAT by contrast, instructs completing psychologists to input narrative conclusions after each category of mental function. Although the eCAT leaves a separate space at the end of the form for further narrative, that space is labeled "additional explanation." Moreover, the eCAT's instructions make clear that *all* narrative responses are part of a whole and form the completing psychologist's findings regarding the

---

4. A copy of the traditional SSA-4734-F4-SUP form is available for download at the following address: http://www.reginfo.gov/public/do/PRAViewIC?ref_nbr=200701-0960-005&icID=9288.

claimant's functional capacity.[5] Thus, for the purposes of the POMS, the "1-2 step" limitation was a "Section III" finding that the ALJ was required to address if he intended to leave it out of his RFC.

Third, even if the "1-2 step" limitation were analogous to a Section I finding, that would not mean that the ALJ was free to disregard it. The POMS's distinction between Section I and Section III is aimed at the non-examining doctor who completes the form and has no bearing on how the ALJ is to weigh the doctor's opinion. *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1157–64 (D.N.M. 2016) (explaining, in detail, why the entire MRFC form constitutes opinion evidence that the ALJ must consider); *Frantz*, 509 F.3d at 1302–03 (discussing ALJ's obligation to explain why he adopted some of the "moderate limitations" indicated on the non-examining psychologist's MRFC form but not others).

The Commissioner further argues that, even if the ALJ erred in omitting the "1-2 step" limitation from his RFC determination, this does nothing to undermine the ALJ's finding that Plaintiff could perform the work of a Small Product Assembler. (*See* Doc. 16 at 7–8; Doc. 20 at 1, citing *Young Y.W. v. Saul*, No. 18-CV-154-CVE-FHM, 2019 WL 4865193 (N.D. Okla. July 16, 2019), report and recommendation, adopted 2019 WL 4039625 (N.D. Okla. Aug. 27, 2019). The Commissioner contends that the inclusion of a one- to two-step instructional limitation in a

---

5. In introducing the prompts regarding each of the mental functions to be rated, the eCAT instructs as follows:
> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box.

(R. 74, 89).

claimant's RFC does not preclude a finding that he can work in an occupation requiring GED reasoning level 2, even though level 2 reasoning, by definition, requires a worker to be capable of carrying out "detailed" instructions, *see* DOT, app. C, 1991 WL 688702. The DOT describes the GED scale as a measure of education, not mental function. Because GED and RFC measure different things, the Commissioner argues, a one- to two-step instructional limitation does not actually conflict with a job requiring reasoning level 2. (Doc. 16 at 6).

This argument is unavailing. The Court has rejected it elsewhere. *See Steven D. v. Saul*, No. 18-CV-330-JED-FHM, 2020 WL 5229703, at *4 (N.D. Okla. Sept. 2, 2020) (reasoning that, although the DOT describes GED as a measure of education, the various "levels" are defined in terms of functional ability). And the Tenth Circuit has already decided that a job's GED reasoning level may place the occupation beyond the plaintiff's mental RFC. *See Hackett v. Barnhart*, 395 F.3d 1168, 1174–75, 1176 (10th Cir. 2005); *Paulek v. Colvin*, 662 F. App'x 588, 584 (10th Cir. 2016).

In sum, the ALJ failed to properly address the opinion evidence offered by the state agency psychologists. Although the state agency doctors found that Plaintiff was capable of following "simple instructions," they specified that this meant instructions of one to two steps. Then, despite giving "substantial weight" to their opinions, the ALJ omitted the "1-2 step" limitation from his RFC. He was free to do this, *see Chapo*, 682 at 1288 ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."), but he was required to explain his reasoning in doing so, *see Frantz*, 509 F.3d at 1302–03. On remand, the ALJ should either incorporate the limitation into his RFC and proceed accordingly or explain why he declined to do so in the first instance.

8

The Court notes here that inclusion of the "1-2 step" limitation in Plaintiff's RFC would not necessarily dictate a finding that she is disabled. The other two occupations proposed for Plaintiff require only reasoning level 1, which Plaintiff concedes is consistent with a one- to two-step instructional limitation. And, as explained further below, substantial evidence supports the ALJ's finding that these occupations were within the Plaintiff's RFC. Consequently, even if the Small Products Assembler jobs are disregarded, there would still be 110,000 jobs available for Plaintiff in the national economy. This would arguably be enough to qualify as "significant numbers" for the purposes of the dispositive question at step 5.

Nevertheless, the Court declines to reach the question of whether the availability of 110,000 jobs satisfies the "significant numbers" requirement. The burden at step five lies with the Commissioner, and he has not argued that the inclusion of Small Products Assembler in the list of proposed occupations was harmless error. Moreover, the ALJ included no discussion of the factors relevant to what would constitute significant numbers in this case, and the Tenth Circuit has made it clear that judicial line-drawing in this context is inappropriate. *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004). The issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and this evaluation "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir.1992). Accordingly, the Court leaves it to the ALJ to address numerical significance in the event he reverses course on his RFC determination and finds that the role of Small Products Assembler is inappropriate for Plaintiff.

    **B.**    **Mathematical Abilities**

In her Opening Brief, Plaintiff argues that the ALJ failed to properly consider her struggles with math. (Doc. 14 at 5–6). During a Mental Status Evaluation, the examining psychologist asked

Plaintiff how many nickels were in $1.15. Plaintiff apparently answered, "100." (R. 283). Plaintiff argues that all jobs in the DOT require at least a GED Mathematical Development of Level 1, which requires a worker to be able to perform "the four basic arithmetic operations with coins as part of a dollar." *See* DOT, app. C. Given her exam results, Plaintiff argues, the ALJ's conclusion that she could perform in any of the proposed jobs was therefore erroneous.

Judge McCarthy deemed the argument waived due to Plaintiff's failure to meaningfully develop it. (Doc. 18 at 5). The Court agrees. Citing to a single piece of evidence is not sufficient to undermine an ALJ's opinion, particularly when, as here, the complaining party cites to no legal authority illustrating why the error resulted in meaningful prejudice. *See United States v. Rodriguiez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (appellants have the burden of tying the relevant facts to their legal contentions and must provide specific reference to the record to carry the burden of proving error).

Moreover, Plaintiff ignores contrary evidence in the record. Plaintiff graduated high school, albeit under an "individual education plan," lives on her own with her children, and manages her household affairs without trouble. (R. 24, 59). She also testified that she thinks she can handle her own finances, even if, in her opinion, she needs "a little assistance." (*See* R. 21, 58). Given the record as a whole, Plaintiff's argument on this front is little more than a request for the Court to reweigh the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

    **C.**    **Plaintiff's HIV Status**

Plaintiff also argues that the ALJ erred at step five because he failed to properly consider her HIV status. Citing "common sense," Plaintiff claims that the job of Agricultural Produce Sorter would be inappropriate for a person with HIV. (Doc. 14 at 6). This argument borders on frivolous.

For one, Plaintiff assumes, citing no evidence, that the job of Agricultural Produce Sorter would require her to work with knives. Moreover, Plaintiff's current treatment regime has rendered

10

her viral load undetectable, so it is unclear to what degree she would be a risk even if the job did entail the use of cutlery. Because Plaintiff's argument is purely speculative, the Court finds that substantial evidence supports the ALJ's finding that she could work as an Agricultural Produce Sorter.

### D. Adaptability to the Work Environment

Finally, Plaintiff argues that the ALJ failed to adequately consider the opinion of a consultative examiner (CE) who found that Plaintiff "can be expected to experience difficulty . . . adapting to the demands of a work environment when compared to same age peers." (*See* Doc. 14 at 7; R. 290). Plaintiff notes that, although the ALJ gave "some weight" to the CE's opinion, "the ALJ did not include an adaptability limitation in his RFC. Plaintiff argues that this was error because the proposed occupations are all "fast-paced" jobs.

Judge McCarthy correctly rejected this argument, noting that, while discussing Plaintiff's non-exertional limitations, the ALJ concluded that there was "no evidence that she cannot adapt to changes in her environment or to demands that are not already a part of her daily life." (Doc. 18 at 8, quoting R. 20). "As the primary caretaker of two young children," the ALJ reasoned, "the claimant likely faces both of those situations on a daily basis." (*Id.*). In light of this comment, Judge McCarthy found that the ALJ had adequately explained what portion of the CE's opinion he intended to adopt.

In her Objection, Plaintiff briefly argues that it was improper for Judge McCarthy to cite Plaintiff's ability to manage her own household and raise children as evidence that she was capable of adapting in a work environment. (Doc. 19 at 3). However, neither the ALJ nor Judge McCarthy cited Plaintiff's daily activities to wholly discount her alleged limitations. They referenced her daily activities for the limited purpose of showing that she is adaptable. This was reasonable. Few could argue that raising children does not require adaptability. Moreover, the state agency

psychologists appear to have reached the same conclusion, as they also found that Plaintiff did not have any adaptation limitations. (R. 71, 76, 86, 91). Given the record as a whole, the ALJ's decision not to credit the CE's adaptability finding was reasonable.

## IV. CONCLUSION

For the foregoing reasons, the Court **rejects** the part of the R&R relating to the ALJ's failure to properly consider the opinions of the state agency psychologists. (*See* Doc. 18 at 3–4). The R&R is otherwise accepted as discussed above. This matter is therefore **reversed in part and remanded** to the Commissioner for further proceedings in accordance with this decision. A separate Judgment will be entered forthwith.

SO ORDERED, this 29th day of September, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT